# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

| | | |
|---|---|---|
| GEORGE MARK GOWEN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CV 512-034 |
| | * | |
| ASSURITY LIFE INSURANCE CO. and | * | |
| RALPH V. AYCOCK, | * | |
| | * | |
| Defendants. | * | |

## ORDER

Presently before the Court are Plaintiff's Motion to Remand this case to the State Court of Charlton County (Dkt. No. 10) and Defendant Aycock's Motion to Dismiss or Transfer Venue (Dkt. No. 3). Upon due consideration, both motions are **DENIED**.

## I.   INTRODUCTION

This action is predicated on the denial of disability income resulting from Defendants' alleged tortious actions. Specifically, Plaintiff alleges that Defendants misled him into procuring a five (5) year disability income policy when he bargained for a ten (10) year policy. Dkt. No. 1-2. Plaintiff

1

asserts the following claims and remedies against Defendants: Declaratory Relief, Misrepresentation, Negligence, and Attorney's Fees. Id. The causes of action allegedly originated in Charlton County, Georgia. Id.

Plaintiff filed this action in the State Court of Charlton County, Georgia. Id. Pursuant to Georgia law, Defendant Aycock filed a Motion to Dismiss or Transfer Venue. Dkt. No. 3. Pursuant to 28 U.S.C. § 1446, Defendants removed the case to this Court. Dkt. No. 1. Defendants assert that the Court has subject matter jurisdiction because the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., completely preempts Plaintiff's state law claims. Id.

Plaintiff filed a motion to remand the case to State Court. Dkt. No. 10. The Court heard oral argument regarding the parties' motions on January 15, 2013.

## II. CLAIMS AGAINST DEFENDANT ASSURITY

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to federal court. 28 U.S.C. § 1441(a). Original jurisdiction exists for, inter alia, cases "arising under the Constitution, laws, or treaties of the United

2

States." 28 U.S.C. § 1331. Ordinarily, the "well-pleaded complaint" rule determines whether a particular case arises under federal law. Aetna Health Inc. v. Davila, 542 U.S. 200, 207 (2004). Specifically, the court has federal question jurisdiction if a federal question is presented on the face of the plaintiff's complaint. See Kemp v. Int'l Bus. Machines Corp., 109 F.3d 708, 712 (11th Cir. 1997) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 11 (1983)). The well-pleaded complaint rule directs the Court's "focus to the terms of the complaint as the plaintiff cho[se] to frame it." Id. If the plaintiff elects to bring only state law causes of action in state court, the complaint contains no federal question. In such case, the case may not be removed to federal court. Id.

"Because a federal question must appear on the face of the plaintiff's complaint to satisfy the well-pleaded complaint rule, a defense which presents a federal question cannot create removal jurisdiction." Id. "Thus, a case may not be removed to federal court on the ground of a federal question defense alone, even if that defense is valid." Id. (citation omitted); see, e.g., Franchise Tax Bd., 463 U.S. at 25-28 (holding that ERISA

3

preemption defense, without more, does not create removal jurisdiction).

"[T]he removing party bears the burden of showing the existence of federal subject matter jurisdiction." Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1343 (11th Cir. 2009) (citing Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1373 (11th Cir. 1998)). "To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." Stillwell v. Allstate Ins. Co., 663 F.3d 1329, 1333 (11th Cir. 2011) (citing Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997)). The court may consider the plaintiff's pleadings as well as affidavits and deposition transcripts submitted by the parties. Id. at 1333 n.1; Crowe, 113 F.3d at 1538. Plaintiff is a Georgia resident. Dkt. No. 1-2 ¶ 1. Defendant Assurity Life ("Assurity") is a foreign corporation.[1] Id. ¶ 2. Defendant Aycock is a Georgia resident.[2] Id. ¶ 3.

---

[1] Defendant Assurity is a Nebraska corporation with its principal place of business in Nebraska. Dkt. No. 1-2 ¶ 2.

4

Because Plaintiff and Defendant Aycock are both Georgia residents, this Court lacks diversity jurisdiction over the case. See 28 U.S.C. § 1332. Thus, the Court lacks subject matter jurisdiction unless Plaintiff's case arises under federal law. See id. § 1331. For the reasons stated below, this Court finds that Plaintiff's claims against Defendant Assurity are completely preempted by ERISA. Consequently, the Court has federal question jurisdiction over those claims.[3]

Plaintiff brought only state law claims. See Dkt. No. 1-2. Therefore, the Court lacks federal question jurisdiction under the well-pleaded complaint rule. See Conn. State Dental Ass'n, 591 F.3d at 1343. However, there is a narrow exception to the well-pleaded complaint rule. That exception "exists where the preemptive force of a federal statute is so extraordinary that it converts an ordinary state law claim into a statutory federal claim." Id. (citing Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987) and Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1212 (11th Cir. 1999) (quotation omitted)).

---

[2] Defendant Aycock's residence is in Appling County, Georgia. Dkt. No. 3.
[3] See 29 U.S.C. § 1132(e)(1) ("Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, . . . .").

AO 72A
(Rev. 8/82)

There are two types of ERISA preemption: complete (or super) preemption and defensive (or conflict) preemption. See id. at 1343-44. Complete preemption provides a basis for removal. Id. at 1344. Defensive preemption does not. Id. Consequently, the Court has subject matter jurisdiction only if ERISA completely preempts Plaintiff's state law claims.

"Congress may preempt an area of law so completely that any complaint raising claims in that area is necessarily federal in character and[,] therefore[,] necessarily presents a basis for federal court jurisdiction." Kemp, 109 F.3d at 712 (citing Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987)). Complete preemption "convert[s] state law claims into federal claims." Id. Consequently, complete preemption "allow[s] a defendant to remove the case to federal court." Id.

"Complete preemption under ERISA derives from ERISA's civil enforcement provision, § 502(a)." Conn. State Dental Ass'n, 591 F.3d at 1344. Section 502(a) is codified at 29 U.S.C. § 1132(a). Section 1132(a) "has such 'extraordinary' preemptive power that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" Id. (citing Taylor, 481 U.S. at 65-66). Thus, state law claims seeking relief available under

6

§ 1132(a) are recharacterized as ERISA claims.  <u>Kemp</u>, 109 F.3d

at 712 (citing <u>Taylor</u>, 481 U.S. at 67).  Consequently, any

"cause[] of action within the scope of the civil enforcement

provisions of § [1132(a)] [is] removable to federal court."

<u>Conn. State Dental Ass'n</u>, 591 F.3d at 1344 (alterations in

original; citation omitted).

Determining whether § 1132(a) completely preempts a

plaintiff's claims requires two inquiries:  "(1) whether the

plaintiff could have brought its claim under § [1132(a)]; and

(2) whether no other legal duty supports the plaintiff's claim."

<u>Id.</u> at 1345 (citing <u>Davila</u>, 542 U.S. at 210).[4]

Defensive preemption "is a substantive defense to preempted

state law claims."  <u>Id.</u> at 1344 (citing <u>Jones v. LMR Int'l,

Inc.</u>, 457 F.3d 1174, 1179 (11th Cir. 2006)).  It "arises from

ERISA's express preemption provision, § 514(a), which preempts

--------------------

[4] In <u>Connecticut State Dental Association</u>, the Eleventh Circuit recognized
that the test articulated by the Supreme Court in <u>Davila</u> augmented the test
previously utilized by the Eleventh Circuit to determine whether ERISA
preempted a plaintiff's state law claims.  <u>See</u> 591 F.3d 1337, 1345 (11th Cir.
2009) (noting that the Eleventh Circuit previously used the test articulated
in <u>Butero v. Royal Maccabees Life Ins. Co.</u>, 174 F.3d 1207 (11th Cir. 1999)).
The Eleventh Circuit also recognized that it used the <u>Butero</u> test after the
Supreme Court's decision in <u>Davila</u>.  <u>Id.</u> at 1345 n.5 (citing use of the
<u>Butero</u> test by the court in <u>Cotton v. Mass. Mut. Life Ins. Co.</u>, 402 F.3d 1267
(11th Cir. 2005)).  However, the court clarified that the use of the <u>Butero</u>
test in <u>Cotton</u> was dicta and, therefore, not controlling.  <u>Id.</u>  Consequently,
this Court applies the test articulated by the Eleventh Circuit in
<u>Connecticut State Dental Association</u>.

AO 72A
(Rev. 8/82)

any state law claim that 'relates to' an ERISA plan." Id.
(citing 29 U.S.C. § 1144(a)) (footnote omitted). Because
defensive preemption is a defense, it is not a basis for
removal. Id. (citing Gully v. First Nat'l Bank, 299 U.S. 109,
115-16 (1936)); see also Ervast v. Flexible Prods. Co., 346 F.3d
1007, 1012 n.6 (11th Cir. 2003) (Defensive preemption "provides
only an affirmative defense to state law claims and is not a
basis for removal.").

A. Claims Against Defendant Assurity

    To establish complete preemption, Defendant Assurity must
show that Plaintiff could have brought his claim under 29 U.S.C.
§ 1132(a). Borrero v. United Healthcare of N.Y., Inc., 610 F.3d
1296, 1301 (11th Cir. 2010) (quoting Davila, 542 U.S. at 210).
Plaintiff could have brought his claim under § 1132(a) if four
(4) requirements are met:  (1) there is a relevant ERISA plan,
(2) Plaintiff has standing to sue under ERISA, (3) Defendant
Assurity is an ERISA entity, and (4) Plaintiff seeks
compensatory relief akin to that available under § 1132(a). See
Butero, 174 F.3d at 1212 (citations omitted); Conn. State Dental
Ass'n, 591 F.3d at 1350 (citing Davila, 542 U.S. at 211-12 and

8

_Marin Gen. Hosp. v. Modesto & Empire Traction Co._, 581 F.3d 941, 947-49 (9th Cir. 2009)).

In addition to showing that Plaintiff could have brought his claim under § 1132, Defendant Assurity must show that "no legal duty (state or federal) independent of ERISA or the plan terms is violated." _Davila_, 542 U.S. at 210; _see also_ _Conn. State Dental Ass'n_, 591 F.3d at 1353.

1.  ERISA Plan

The disability policy at issue is a relevant ERISA plan. An ERISA plan "does not have to be in writing." _Suggs v. Pan Am. Life Ins. Co._, 847 F. Supp. 1324, 1330 (S.D. Miss. 1994). Moreover, a formal document designated as "the Plan" is not required to establish that an ERISA plan exists. _Id._ (citing _Mem'l Hosp. Sys. v. Northbrook Life Ins. Co._, 904 F.2d 236, 241 (5th Cir. 1990)). "[T]he purchase of an insurance policy does not, in and of itself, establish the existence of an ERISA plan." _Id._ However, such a "purchase is evidence of the establishment of a plan . . . [and] the purchase of a policy or multiple policies covering a class of employees offers substantial evidence that a plan . . . has been established." _Id._ (quoting _Mem'l Hosp. Sys._, 904 F.2d at 242 and _Donovan v._

9

Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc)).
Ultimately, the existence of an ERISA plan is a question of
fact, to be answered in light of all the surrounding
circumstances and facts from the point of view of a reasonable
person. Langley v. DaimlerChrysler Corp., 502 F.3d 475, 479
(6th Cir. 2007); see also Slamen v. Paul Revere Life Ins. Co.,
166 F.3d 1102, 1104 (11th Cir. 1999).

The term "plan" as used in ERISA means an "employee welfare
benefit plan."[5] See 29 U.S.C. § 1002(3). For present purposes,
an "employee welfare benefit plan" governed by ERISA has five
(5) elements. It is (1) a "plan" (2) established or maintained
(3) by an employer (4) to provide its participants or their
beneficiaries (5) disability benefits. Id. § 1002(1); see also
Donovan, 688 F.2d at 1371 (dividing the statutory definition
into elements).

There is a "plan." "An ERISA plan exists whenever there
are intended benefits, intended beneficiaries, a source of
financing, and a procedure to apply for and collect benefits.'"

---

[5] In the alternative, "plan" means an "employee pension benefit plan or a plan
which is both an employee welfare benefit plan and an employee pension
benefit plan." 29 U.S.C. § 1002(3). However, employee pension benefit plans
are not at issue in this case.

10

Butero, 174 F.3d at 1214 (citing Donovan, 688 F.2d at 1372); see also Pegram v. Herdrich, 530 U.S. 211, 223 (2000) ("Rules governing collection of premiums, definition of benefits, submission of claims, and resolution of disagreements over entitlement to services are the sorts of provisions that constitute a plan. . . . Thus, when employers contract with an HMO to provide benefits to employees subject to ERISA, the provisions of documents that set up the HMO are not, as such, an ERISA plan; but the agreement between an HMO and an employer who pays the premiums may . . . provide elements of a plan by setting out rules under which beneficiaries will be entitled to [benefits]."). Here, the intended benefit was disability income. Plaintiff was the intended beneficiary. See Dkt. No. 14, at 6.[6] Plaintiff's employer provided financing by paying the

---

[6] See, e.g., Williams v. Wright, 927 F.2d 1540, 1545 (11th Cir. 1991) ("[A] plan covering only a single employee, where all other requirements are met, is covered by ERISA."); Cowart v. Metro. Life Ins. Co., 444 F. Supp. 2d 1282, 1292 (M.D. Ga. 2006) ("Though the plan was offered to only three employees . . . the requirement that there exist an identifiable class of beneficiaries is satisfied even if the benefit in question is conferred on only a single person." (citing Randol v. Mid-West Nat'l Life Ins. Co., 987 F.2d 1547, 1550 n.4 (11th Cir. 1993))).

11

premiums.  See id. at 7.[7]  The disability policy provided the
procedure to apply for and collect benefits.[8]  See id.

The plan was "established or maintained."  "A plan is
'established' when there has been some degree of implementation
by the employer going beyond a mere intent to confer a benefit."
Butero, 174 F.3d at 1214 (citing Whitt v. Sherman Int'l Corp.,
147 F.3d 1325, 1331 (11th Cir. 1998)); see also Donovan, 688
F.2d at 1373 ("Acts or events that record, exemplify or
implement the decision [are] direct or circumstantial evidence
that the decision has become reality—e.g., financing or
arranging to finance or fund the intended benefits, establishing
a procedure for disbursing benefits, assuring employees that the
plan or program exists—but it is the reality of a plan, fund or
program[,] and not the decision to extend certain benefits[,]
that is determinative.").  Such implementation happened here.
Plaintiff consulted an insurance agent, selected the terms of

_____

[7] See, e.g., Cowart, 444 F. Supp. 2d at 1286-87 (noting that "premiums were to
be paid with the employer's funds" (internal quotation marks omitted)); Suggs
v. Pan Am. Life Ins. Co., 847 F. Supp. 1324, 1331 (S.D. Miss. 1994) ("[T]he
source of financing was by premiums paid by the employer and/or the employees
and submitted by the employer to the insurer.").
[8] Presumably Plaintiff followed this procedure, as he filed his claim and was
denied coverage.  See Dkt. No. 1-2; see, e.g., Suggs, 847 F. Supp. at 1331
("[T]he procedure for receiving benefits was to make claim with the insurer
through forms provided to the employer by the insurer and completed by the
insured").

the disability income policy, and contracted for the policy.
See Dkt. No. 1-2 ¶¶ 9-15; Dkt. No. 14, at 4-7. Plaintiff's
employer then remitted premium checks to Defendant Assurity.
See id. Thus, Plaintiff's employer went beyond the intent to
confer a benefit. It implemented its desire to provide a
disability income policy. Consequently, the plan was
established. Compare Whitt, 147 F.3d at 1331 (finding no plan
established where asserted "plan" was no more than several draft
plans), with Butero, 174 F.3d at 1214 (finding established plan
where plaintiff "consulted an insurance agent, selected the
terms of the group policy it wished to purchase for its
employees, completed an application form for the policy,
solicited enrollments from its employees, collected money
through payroll deductions, and remitted premium checks").
Moreover, even if Plaintiff's employer did not establish the
plan, it took actions to maintain the plan. See Crooms v.
Provident Life & Acc. Ins. Co., 484 F. Supp. 2d 1286, 1297-99
(N.D. Ga. 2007) (The "requirement, that the plan be 'established
or maintained' by the employer is a disjunctive one. 'A showing
of either one is sufficient to give rise to ERISA's
application.'" (citing Cowart v. Metro. Life. Ins. Co., 444 F.
Supp. 2d 1282, 1293 (M.D. Ga. 2006))). Here, Plaintiff's

13

employer paid all of the applicable insurance premiums. <u>See</u>
Dkt. No. 14, at 7. These payments maintained the plan. <u>See,</u>
<u>e.g.</u>, <u>Randol v. Mid-West Nat'l Life. Ins. Co. of Tenn.</u>, 987 F.2d
1547, 1551 (11th Cir. 1993) (finding that an employer
"maintained" a plan when, "to facilitate the employees'
obtaining health coverage," it "wrote the first check purchasing
the policies, established a system whereby the premiums would be
paid monthly by means of a bank draft on the corporate account,
contributed $75 per employee per month toward the premiums, and
collected from the employees the balance of the premiums through
a withholding system").

Plaintiff's employer maintained the plan. An "employer" is
"any person acting directly as an employer, or indirectly in the
interest of an employer, in relation to an employee benefit
plan." 29 U.S.C. § 1002(5). Here, Plaintiff's employer
maintained the plan by remitting premium checks to Defendant
Assurity. Dkt. No. 14, at 7.

It is undisputed that the plan was established to provide
its participant disability income benefits. <u>See</u> Dkt. No. 1-2
¶¶ 9-15. Therefore, Plaintiff's claim involves a
plan established by an employer to provide its participant
disability benefits. Consequently, the disability policy at

14

issue is a relevant ERISA plan.  Compare Randol, 987 F.2d at

1551 (finding ERISA plan where employer purchased health

insurance policies and remitted monthly premium checks to

insurer, where such checks were funded partially by employer and

partially by employees); Mem'l Hosp. Sys., 904 F.2d at 241-43

(finding ERISA plan existed where employer purchased group

health insurance policy even though employer's "administrative

function" in administering the plan was minimal and appeared to

only involve remitting monthly premium payments); Suggs, 847 F.

Supp. at 1331 (recognizing that ERISA plan existed because "it

would have been obvious to a reasonable person that the intended

benefits of the policy at issue . . ., purchased by [the]

Plaintiff's employer, were medical coverages; that the

beneficiaries were the employees . . . enrolled in the program;

that the source of financing was by premiums paid by the

employer and/or the employees and submitted by the employer to

the insurer; and that the procedure for receiving benefits was

to make claim with the insurer through forms provided to the

employer by the insurer and completed by the insured"), with

Letner v. UNUM Life Ins. Co. of Am., 203 F. Supp. 2d 1291 (N.D.

Fla. 2001) (finding no ERISA plan where employee applied for and

purchased policy that was not sponsored by her employer, where

15

employee was policy owner and named insured, and where employer simply withheld employee's premiums through payroll deductions but made no financial contribution towards those insurance premiums).

2. Standing Under ERISA

Plaintiff has standing to sue. Specifically, as an employee eligible to receive benefits under the ERISA plan, Plaintiff is a participant. See 29 U.S.C. § 1002(7) (defining participant as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . or whose beneficiaries may be eligible to receive any such benefit"). As a participant, Plaintiff has standing to assert a variety of claims under § 1132(a). See, e.g., 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought . . . by a participant . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."). Consequently, Plaintiff has standing to sue under ERISA.

16

3. ERISA Entity

Defendant Assurity is an ERISA entity. "ERISA entities are the employer, the plan, the plan fiduciaries, and the beneficiaries under the plan." Morstein v. Nat'l Ins. Servs., Inc., 93 F.3d 715, 722 (11th Cir. 1996) (en banc) (citations omitted). "A fiduciary within the meaning of ERISA must be someone acting in the capacity of manager, administrator, or financial adviser to a 'plan.'" Pegram, 530 U.S. at 222 (citing 29 U.S.C. §§ 1002(21)(A)(i)-(iii)). Specifically, the fiduciary function applicable here is Defendant Assurity's exercise of "discretionary authority or discretionary responsibility in the administration of [the ERISA] plan." 29 U.S.C. § 1002(21)(A)(iii). Defendant Assurity is not an ERISA fiduciary merely because it administers or exercises discretionary authority over its own business. See Pegram, 530 U.S. at 223. However, "it [is] a fiduciary if it administers the plan." Id.

Defendant Assurity administers the plan by "control[ling] . . . the payment of benefits" and determining Plaintiff's rights. Morstein, 93 F.3d at 723; see also Davila, 542 U.S. at 218 (2004) ("A benefit determination under ERISA, though, is generally a fiduciary act." (citation omitted)); Butero, 174

AO 72A
(Rev. 8/82)

F.3d at 1213. As such, it is the plan fiduciary.[9] Consequently, Defendant Assurity is an ERISA entity.

## 4. Relief Sought

The relief sought is available under § 1132. Specifically, Plaintiff claims that Defendant Assurity misled him into procuring a five (5) year disability income policy when he bargained for a ten (10) year policy. Dkt. No. 1-2 ¶¶ 24-27. Plaintiff's claim of misrepresentation is "in essence [a] claim[] 'to recover benefits due to [Plaintiff] under the terms of the plan.'" Butero, 174 F.3d at 1213 (citing 29 U.S.C. § 1132(a)(1)(B)); see Engelhardt v. Paul Revere Life Ins. Co., 139 F.3d 1346, 1353 (11th Cir. 1998) (fraud in the inducement is claim for benefits under § 1132(a)(1)); Franklin v. QHG of

---

[9] The absence of a trust fund from which benefits would be paid does not preclude the application of ERISA. See Mem'l Hosp. Sys. v. Northbrook Life Ins. Co., 904 F.2d 236, 243 n.9 (5th Cir. 1990). One of ERISA's principal goals is to protect plan assets held in trust for the benefit of plan participants and beneficiaries. Id. (citing 29 U.S.C. § 1001). "However, ERISA specifically envisions that an employer may establish an employee welfare benefit plan 'through the purchase of insurance or otherwise.'" Id. (citing 29 U.S.C. § 1002(1)); see also Metro. Life Ins. Co. v. Mass., 471 U.S. 724, 732, (1985) ("[ERISA] [p]lans may self-insure or they may purchase insurance for their participants."). Although ERISA "imposes a fiduciary requirement that 'all assets of an employee benefit plan shall be held in trust by one or more trustees,' . . . this provision does not apply 'to any assets of a plan which consist of insurance contracts or policies issued by an insurance company qualified to do business in a State.'" Mem'l Hosp. Sys., 904 F.2d at 243 n.9 (citing 29 U.S.C. §§ 1103(a), (b)(1)).

18

Gadsden, Inc., 127 F.3d 1024, 1029 (11th Cir. 1997) (claim based on alleged misrepresentation by ERISA entity that certain coverage would exist is claim for benefits). As such, the relief sought is available under § 1132(a).

5. No Independent Legal Duty

Plaintiff's cause of action is dependent on the plan's terms. Plaintiff claims that he procured a ten (10) year disability income policy. Dkt. No. 1-2 ¶¶ 24-26. He further contends that Defendant Assurity denied him coverage beyond five (5) years. Id. ¶ 27. Based on Plaintiff's assertions, "interpretation of the terms of [Plaintiff's ERISA-regulated] benefit plan[] forms an essential part of [his] [state law] claim." Davila, 542 U.S. at 213. Therefore, state law "liability would exist . . . only because of [Defendant Assurity's] administration of [the] ERISA-regulated benefit plan[]." Id. Defendant Assurity's potential state law liability "derives entirely from the particular rights and obligations established by [his ERISA-regulated] benefit plan[]." Id. Consequently, Plaintiff's cause of action is dependent on the plan's terms. Compare id. at 212-13 (finding that, although state law imposed a duty on defendants to use

19

"ordinary care" in making health care decisions, that legal duty did not arise independently of the plan because "the failure of the plan itself to cover the requested treatment [was] the proximate cause" of injuries arising from the denial), with Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393 (3d Cir. 2004) (observing that claims would be independent of ERISA plan where claim required interpretation of third-party Subscriber Agreements and the ERISA Plan's coverage and eligibility were not disputed).

6.  Conclusion

In summary, there is a relevant ERISA plan, Plaintiff has standing to sue, Defendant Assurity is an ERISA entity, and Plaintiff seeks compensatory relief that is available under § 1132(a). Consequently, Plaintiff could have brought suit under § 1132. See Butero, 174 F.3d at 1212 (citations omitted). Moreover, Plaintiff's claims against Defendant Assurity depend on the plan's terms. Therefore, Plaintiff's claims against Defendant Assurity are completely preempted by ERISA. Conn. State Dental Ass'n, 591 F.3d at 1345. Consequently, the Court has federal question jurisdiction over Plaintiff's claims against Defendant Assurity.

AO 72A
(Rev. 8/82)

## III. CLAIMS AGAINST DEFENDANT AYCOCK

Defendant Aycock asserts that ERISA preempts Plaintiff's claims against him. However, complete preemption under ERISA does not extend to state law tort claims brought against non-ERISA entities. See Morstein v. Nat'l Ins. Servs., Inc., 93 F.3d 715, 722 (11th Cir. 1996) (en banc) (holding "when a state law claim brought against a non-ERISA entity does not affect relations among principal ERISA entities as such, then it is not preempted by ERISA"). As an insurance agent, Defendant Aycock is not an ERISA entity. See id. (adopting rule from Perkins v. Time Ins. Co., 898 F.2d 470, 473 (5th Cir. 1990)). He does not manage, administer, or provide financial advice to the plan. See 29 U.S.C. §§ 1002(21)(A)(i)-(iii). Consequently, Plaintiff's claims against Defendant Aycock are not completely preempted by ERISA.

Defendant Aycock argues that Plaintiff's claims must be preempted because those claims "relate to" an ERISA plan. See Dkt. No. 13, at 7-10. ERISA supersedes "any and all State laws" that "relate to any employee benefit plan." 29 U.S.C. § 1144(a). Therefore, if Plaintiff's "claims sufficiently relate to an ERISA plan, ordinary preemption principles would bar [Plaintiff's] state law action." See Kemp v. Int'l Bus.

Machines Corp., 109 F.3d 708, 714 (11th Cir. 1997). However, § 1144(a) is an affirmative defense. "The defense of [defensive] preemption, by itself, does not create federal question jurisdiction." Id. (citing Franchise Tax Bd., 463 U.S. at 7, 27-28).

Nevertheless, removal jurisdiction exists over the action by virtue of ERISA's complete preemption of the claims against Defendant Assurity. See, supra, Part II; Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1215 (11th Cir. 1999). Therefore, Plaintiff's claims against Defendant Assurity were removable. Because Plaintiff's claims against Defendant Aycock were joined with these removable claims, the Court can retain jurisdiction over all of Plaintiff's claims. See 28 U.S.C. §§ 1367, 1441(c); Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1353 (11th Cir. 2009) (citing Butero, 174 F.3d at 1215); In re City of Mobile, 75 F.3d 605, 608 (11th Cir. 1996). Specifically, this Court can exercise its supplemental jurisdiction over Plaintiff's remaining state law claims if they "form part of the same case or controversy" as the claims for which the Court has original jurisdiction. 28 U.S.C. § 1367. "Considerations of judicial economy, convenience and fairness to litigants" determine whether it is reasonable

22

and proper for a federal court to proceed to final judgment. Osborn v. Haley, 549 U.S. 225, 245 (2007) (citation omitted).

Plaintiff's claims relate to a single disability insurance policy. Moreover, Defendants' actions and understanding of the policies are related. Defendant Aycock's affidavit suggests that he was a conduit of information between Defendant Assurity and Plaintiff. See Dkt. No. 13-1. Similar evidence and witnesses are likely required to prove the separate claims.

Given the relatedness of the claims and facts, the Court finds that the claims against Defendant Aycock "form part of the same case or controversy" as the claims against Defendant Assurity. Consequently, the Court chooses to exercise its power to retain jurisdiction over Plaintiff's claims against Defendant Aycock.

## IV. VENUE

The Court has subject matter jurisdiction over Plaintiff's claims. See supra Parts II-III. Therefore, the Federal Rules of Civil Procedure determine the appropriate venue. "A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(b)(2).

AO 72A
(Rev. 8/82)

Plaintiff asserts that the actions forming the basis of his Complaint originated in Charlton County, Georgia. <u>See</u> Dkt. No. 1-2 ¶ 5. Charlton County is in the Waycross division. 28 U.S.C. § 90(c)(4). Consequently, the Waycross division is an appropriate venue. 28 U.S.C. § 1391(b)(2). Defendant Aycock agrees. <u>See</u> Dkt. No. 3.

## V.    CONCLUSION

Because Plaintiff's state law claims against Defendant Assurity must be "recharacterized" as federal claims for ERISA benefits, Plaintiff's Complaint includes a sufficient federal question to support removal jurisdiction. The Court exercises its power of supplemental jurisdiction and retains jurisdiction over all of Plaintiff's claims. Accordingly, Plaintiff's Motion to Remand is **DENIED**. Dkt. No. 10.

Given that the Waycross division is an appropriate venue, Defendant Aycock's Motion to Dismiss or Transfer Venue is **DENIED**. Dkt. No. 3.

24

**SO ORDERED**, this 22nd day of March, 2013.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)